# Graham's Appeal.

1. It is only when a dispute as to a matter of fact regarding the validity of a will arises in the Register's Court, that an issue is to be awarded.
2. The register is empowered, but not required in every case, to send every contested fact to a trial at law.

February 2d 1869. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius. WILLIAMS, J., absent.

Appeal from the decree of the Register's Court of *Philadelphia:* In the matter of the will of Ann Hertzog, deceased: No. 305, to January Term 1868.

This appeal was by Sarah Graham, a sister of the testatrix, William Larzalere and Rebecca H., his wife, a grandniece of the testatrix, in her right, and Francis Lasher, a brother of testatrix. On the 14th of June 1866, the will of Ann Hertzog, dated February 28th 1859, with a codicil, dated February 18th 1865, were presented to the register, and admitted to probate. Both the will and codicil were witnessed by Lewis H. Redner and M. L. Frederick. An appeal was taken to the Register's Court by some of the heirs at law and next of kin of the testatrix. By her *will*, testatrix made large bequests to Anna H. Folwell and Harriet S. Folwell, daughters of a niece; bequests to other persons and to a number of benevolent institutions, and gave the residue of her estate to her "right heirs and next of kin in the

[Graham's Appeal.]

same manner in all respects in which said heirs and next of kin would be entitled at my decease, to any estate or property whereof I might die seised or possessed intestate." She appointed Mahlon D. Livensetter and Dr. J. Livingston Ludlow, trustees of part of the real estate devised for Anna H. Folwell. She also appointed Pearson Yard, Mahlon D. Livensetter and Dr. J. Livingston Ludlow executors of her will. Some time after the date of the will, Anna H. Folwell was married to W. Burton Carver, and Harriet S. Folwell was married to Frederick R. Wilkinson. By a codicil made after these marriages, amongst other things, she gave a legacy of $5000 to Rosalie Oliver, a child living with her; she appointed W. Burton Carver trustee, in place of J. Livingston Ludlow, in certain trusts created by her will, she revoked bequests made to Pearson Yard and Dr. Ludlow; revoked their appointment as executors, and appointed W. Burton Carver executor in the place of Dr. Ludlow, and also gave the residue of her estate to Anna H. Carver and Harriet S. Wilkinson, instead of to her heirs at law and next of kin. The codicil excluded the appellants from any part of the estate of the testatrix. The testatrix died June 9th 1866. On the appeal, the Register's Court appointed D. P. Brown, Jr., Esq., examiner.

The testimony on the part of the appellants was to establish coercion, undue influence and imposition on the testatrix in making the codicil, ignorance on her part of its contents, unsoundness of mind, &c. They gave evidence that the testatrix had said that she had no confidence in Carver, that she had heard he was making a will to suit himself, &c. There was evidence also of declarations of testatrix that she designed to leave the residue of her estate amongst her heirs; also that she said she had discovered that Mr. Carver had altered her will, that he had willed to himself a great many things she did not intend he should have, and she would have a new will made. There was evidence that some of her relatives and intimate friends were not allowed to see her during her last illness, which commenced February 5th 1866; that during her last illness she said there was a deep-laid scheme of the Carvers to grasp all: also evidence of declarations by the testatrix disparaging of Mrs. Carver and Mrs. Wilkinson and of Mr. Carver. The conversations and declarations of the testatrix, except those during her last illness, were two or three years before her death. There was also some evidence which was intended to show that the testatrix could not read English writing.

The appellees gave evidence in answer to that of the appellants as to the feelings of the testatrix towards Mrs. Wilkinson and Mr. and Mrs. Carver. The will and codicil were both witnessed at the office of Mr. Livensetter, the conveyancer. Her attending physician, Dr. Ludlow, testified that her mind was entirely sound

during her last sickness, except in the latter part, "when she would have moderate hallucination, not very marked." He also testified that he gave directions not to admit visitors to her during her last illness.

The appellants applied for an issue to try the validity of the will and codicil. The Register's Court decreed that "the application for an issue on said will and codicil be refused and the said appeal is dismissed."

The appeal was from that part of the decree refusing an issue on the codicil.

*W. J. McElroy* and *William L. Hirst*, for appellants.—If there was any evidence of coercion, &c., an issue should have been awarded. Coercion and undue influence are to be ascertained from the circumstances of each case: Zimmerman *v.* Zimmerman, 11 Harris 378. Fair argument may be used with a testatrix, but not such influence as to interfere with her free agency: Miller *v.* Miller, 3 S. & R. 267; Davis *v.* Calvert, 5 Gill & Johns. 269; 2 Greenl. Ev. § 688; Brown *v.* Molliston, 3 Whart. 138.

*G. W. Thorne* and *E. K. Price*, for appellees.—The undue influence must be exerted over the very act of devising: Dean *v.* Negley, 5 Wright 312; Eckert *v.* Flowry, 7 Id. 47. The testimony formed no material issue and the court was not bound to award one: Dean *v.* Fuller, 4 Wright 479; Act of March 15th 1832, Pamph. L. 135, § 41, Purd. 861, pl. 23. Where there is no conflict of evidence it would be absurd to incur the costs of a trial, there being nothing to try: Bradford's Will, 1 Parsons' R. 157. Evidence that a testator knew the contents of a will whose execution is proved, is not necessary unless where there is fraud or undue influence: Vernon *v.* Kirk, 6 Casey 218; Hoshauer *v.* Hoshauer, 2 Id. 404.

The opinion of the court was delivered, February 15th 1869, by

SHARSWOOD, J.—In Bradford's Will, 1 Parsons' Select Cases 153, Judge King, although he considered that under the 13th section of the Act of March 15th 1832, Pamph. L. 138, entitled "An act relating to registers and registers' courts," the register was bound at the request of any party interested, alleging any matter of fact touching the validity of any testamentary writing, to issue a precept to the Common Pleas, directing an issue to be formed on said fact or facts; yet, held, that when the case was in the Register's Court on appeal, then under the 41st section the rule was different. There it is only when a dispute upon a matter of fact arises, that the issue is to be awarded. "Although the act does not say so in words, it must mean that the disputed fact on which an issue is claimed must be a material fact in the contro-

versy and be so regarded by the court." As to the register, the contrary doctrine was established in Wikoff's Appeal, 3 Harris 281, which renders the reasoning in reference to the Register's Court still stronger. "The *register* is empowered, but not required in every case to send every contested fact to a trial at law. The office of a jury is not to guess at the existence of circumstances, in the absence even of a presumption, for where there is no conflict of evidence, there is no contest of facts; and it would be absurd to incur the costs of a trial when there is nothing to try." Per Gibson, C. J.

Such was the case here. There was no conflict of evidence upon any material fact. Indeed there was not the faintest spark of testimony to impeach the codicil or to show that any improper influence had been exercised upon the mind of the testatrix. It was executed more than a year before her death—at the office of a respectable conveyancer, named as one of her executors in the original will and against whom no charge of misconduct is even insinuated—not one of the parties against whom such a charge is preferred, having been present—and indifferent and disinterested persons, the same who witnessed the will, being called on to attest it. The declarations of the testatrix on her death-bed—when, as her attending physician testified, "she would have moderate hallucination, not very marked"—declarations not referring at all to the instrument in question, nor to any particular facts, but mere general and vague surmises of some deep-laid plot or scheme to grasp all, would not be entitled to any weight whatever if they were admissible. It may be doubted whether a will in writing could be revoked in that way, even if it appeared that the testatrix had changed her mind in regard to the character and designs of the objects of her bounty. No will would be safe if under such circumstances it could be thrown at large before a jury, in the hope that some feeling in favor of equality among the next of kin would influence them to set it aside.

Decree affirmed at the costs of the appellant.